Thank you. And you're reserving some time Mr. Taylor? I'll just take a minute to reserve just in case something pops up that surprises me. Okay. If I may return to the desk and get my water. Of course. I'll count that in my nine minutes. You're taking ten minutes now, is that right? I'm taking nine minutes now and reserving one. Got it. Okay. Okay. Good morning. It is appropriate that we be considering this tax matter on the 10th of April, five days away from tax day and during the height of the crescendo of tax preparation season. Somewhere out there I'm sure there are tax preparers who are puzzling through the morass of the cases in this area without being able to figure out how they should handle their particular case. They can probably do as well by plucking the petals off a daisy rather than trying to figure it out from the case law. The context here helps remind us that for public tax compliance, simplicity is better than complexity and clarity is better than inscrutability. By example, if there were any doubt that there is uncertainty in the law, consider our situation where the government first issued the taxpayers a statutory notice of deficiency for additional taxes saying that the amount in question was not excludable. I filed a petition to the United States Tax Court within the 90-day window provided by law and a few days before the end of the 90-day window, we got a letter saying, oops, we're sorry, you don't owe anything. Go talk to counsel's office to have the appropriate paperwork made. Excerpts of record page 46 is where you'll find that letter from the IRS. So the IRS itself cannot figure out what they want to do in a situation like this. Well, eventually you wind up in front of the tax court judge and you have a trial and it didn't come out well for you. Yes, and so obviously counsel did not buy the wishes of his client to have the case go away. What's wrong with the decision of the tax court? Well, aside from the fact that it took two years to come out and cites only two cases, both of which are in my favor, without explaining why they are against me, I can't think of too many other problems. Oh, plus I lost in an area where there are cases, I believe at least our view of the law, although I don't want to harp on the whole historical context because what I'm really more concerned about, Your Honor, is to emphasize on the note of simplicity that I talked about earlier in my presentation here, I want to emphasize that there are some much more recent cases that give us the guidance that we need. And I'm speaking primarily of the Givens case, which is so important. It's not an appellate case, I understand, and maybe it's a little foolish to be citing trial court cases to an appellate forum, but the case is so thoroughly reasoned and vividly reflects an understanding of the system involved, the four-part system involved in the pensions, disability pensions, service disability pensions, service connected disability pensions, I should say, for public safety employees. The regulation, the specific problem in the regulation is in the subparagraph B, third sentence, which as I read it, codifies existing law saying that if you have a service pension, it is not going to be tax excludable, even if you have a workplace injury, unless the pension is authorized under a workers compensation law, according to the cases, is you have a law that purports to compensate for workplace injuries, you have a formal finding by a relevant board that there is a workplace injury, and a determination by a relevant board granting a pension in compensation for the workplace. What happens when part of the pension is for workers comp, and part of it is based on just your service or your age? What happens then? If part of the, what I didn't hear, part of the is because of your length of service and your age. Well, the point that I'm going to be heading toward, arising out of the Givens Precepts, which is you ask, why was this pension granted? The analysis is full at that point, and whether the pension that is reference to service pension, it does not matter, because the reason why the pension was granted to begin with is the authorization for that pension arose under the workers' compensation law. Do you have a case that so holds? Is there a case that so holds, other than this Givens case, perhaps? Your position is that regardless the component of the payment, if it's part injury, disability, workman's comp, and part service payment, that regardless that the service payment is based on age and years of service, that if the pension is granted to the pensionee, account work-related disability accident or injury, then it's all excludable under Section 104. My question to you, Mr. Taylor, is tell me the Ninth Circuit Court case that so holds and so instructs us to find. I do not believe there is a Ninth Circuit Court case that so holds, and that's why we're here. Any other circuit court? I do not believe so. Okay, thank you. But now, going back to Givens for a moment, Givens dealt with a, sort of the complex workers' compensation scheme for injured policemen and firemen, which has four sequential components, and it dealt with the second of those four sequential components, which is that after a year's salary continuation, the taxpayer would use up, was authorized to use up his sick leave, and so he excluded that on his return. The government is saying, well, sick leave is usable both for non-workplace injuries and for workplace injuries, and therefore, if you will, the two, the availability of sick leave for non-workers' comp-type injuries poisons it as a workers' comp payment, and therefore, it's includable in income, and the Givens court takes a look at this and says, the fact that some of the compensatory elements of the act might be the same as those enjoyed by other county employees who have not suffered industrial injuries in no manner whatsoever serves to remove such compensation from outside the purview of the workers' compensation. But wasn't he compensated for injuries sustained on the job? That's what... Oh, sure. Exactly. And the amount then was tied to what the other pensions would have been. Right. In other words, it's the same... But that's different from your guy, isn't it? Your guy is compensated for injuries on the job pursuant to the workers' comp statute. It's not really a statute, but by regulation, it has the same effect, and he gets an extra because of his time in service, and he's only taxed for the amount of income that he gets for the time in service, as I understand it. The rest of the stuff, most of his pension is tax-free because it's tied to his injuries. Right, but... But he had more time in service, so he gets more money, and that part is taxable. That's the way I understand it. And that's different from Gibbons. If we can... Oh, I don't think so, Your Honor, with due respect. Okay. Because in each case, what we have is a cross-reference in the statute to what is outside the workers' comp arena is taxable income. Sick pay is taxable income outside the workers' comp arena. A cash flow modeled on a service pension, likewise, by analogy, should be non-taxable if the authority for granting it is coming out of the workers' workers' compensation pension stated in its letter to the taxpayer, and this is in the record, Your Honor, stated in its letter under authority of a California statute, income that he had been receiving as a service pension while waiting for the determination of whether he would get a income was retroactively re-characterized as workers' compensation income. I see you're down. We'll give you a minute in rebuttal, Mr. Taylor. Thank you very much. Thank you very much. Good morning. I'm Bob Kovacevic, representing three people, Campbell, Scott, and Wyman. I'd like to respond to one question. The question, if I understood it right, was what's wrong with the Seward's opinion? Now, obviously, I don't represent Mr. Seward. Mr. Taylor did a good job on that. But my response, and because I do respond, the district court opinions in all three of these cases essentially followed Seward's. My point that I attempt to make is Seward's was issued by one judge. It was not, and that judge, Judge Foley, did not review Givens. Givens was a full court opinion in the United States Tax Court, which would normally be more binding than a single judge opinion. He didn't discuss Givens. And Givens held and holds that it's not how the money is paid, it's whether or not the person was adjudicated as a disabled for on-the-job injuries. And that segues into the code section itself. It says, 104 says, amounts received. And frankly, that's not capable of any ambiguity, because, first of all, amounts received is what you get in the paycheck. And the, all of the declarations of my clients say that they took what was given. So the statute itself doesn't need any. Does it say amounts received, and I can't remember the exact words, on account of? On account of work-related, the statute, Your Honor. But some portion of that amount was not received on account of work-related injury. It was received because of years of service and age, wasn't it? I don't agree with Your Honor. My answer, Your Honor, is the California Code, which I have in front of me, 31727.4. It states, and I won't take the Court's time to read it, but it says that that statute takes precedence over all others, and it is limited to work-related disability. And it determines what the, how the monthly installments are paid. And so you have to be in a service-connected disability for that statute, 31727.4, to apply. And my answer is that there's only a part of a formula to be used. There was also a question as to whether or not there's a case in point. I submit to Your Honors that Your Honors are bound by Picard and Freeman, which of course are Ninth Circuit. Picard says that there has to be a conversion, a transfer, into full regular retirement, that the part is not enough. It has to be a conversion to a non-disability pension. And I think that Picard, first of all, held totally excludable, and so did Freeman under similar facts. The question was asked whether there is a case in point. I submit both those cases are in point, and as of course the Court knows, the Court is bound by Ninth a single court decision, a case called Bakken. It's a tax court case. I unfortunately didn't cite it in the brief, but it's a summary opinion, B-A-K-K-E-N. It's 2011 Westlaw 1485621. Bakken follows Picard. Now again, it's a tax court summary opinion, and it would not be binding on Your Honors, but it states it has to do with a person who lived in Montana, and he worked as a police officer in Minnesota and retired. And it discusses Picard, and it says we are bound under the tax court Golsan rule to follow the Ninth Circuit, and it follows Picard. I submit there are three cases in point. Can I go back to Picard a minute? The question is that the whole pension in Picard, as I understand it, I just read it recently again, was that the only way he got any pension at all was because of his work-related injury. Am I wrong about that? No, Your Honor, you're right about that. That's different from our case, isn't it? Because in our case, by statute, he gets one half of his pay because he has a disability income, but because he has time in service, which was not the issue in Picard, he gets more. That's right. During the time, I'm sorry, you're correct, Your Honor, but my answer is that during the time he was on a work-related disability, it accrued pension to him, as the court knows, and the court read that case, but that is not the sole criterion. Picard said it is not a transfer to non-work-related regular pension. Here we have a formula that is only part of what my clients receive as firefighters who are disabled. And so it's merely a part of a computation which has limitations. It has, say, so much goes in and can't be over a greater amount, it is not a total substitute, if you will, say, okay, you no longer get disability pension, now you're getting a regular pension on retirement. That isn't done. We don't know how LACERA, Los Angeles County Employment Association, computes all this, but we do know in the declarations that I've filed here, give only one check, and all my clients have executed declarations, written a record, and say, we only get one check. And we did not elect anything. And so we took what we were given. And so really, there is no demarcation. The statute I just read part of doesn't say, now after a certain time, you're on regular retirement. I submit to your honors that it has to be clear that there's a substitute and say, now you're no longer getting disability. We argue, of course, in the briefs and say, wait a minute, a firefighter who is disabled, occupationally, can't go back to work. They're done, their job is over. Unlike most professions, because they're arduous in an activity that takes a lot of physical toil and often makes people become disabled in the course of their employment, they have a special statute that says, look, you get disability from the first. When you apply that to my clients, the disability occurs even if you work one day, if you're just a fireman. My understanding, even if you're training as a fireman and you become disabled, you get it forever, no matter what, how long you work there. It's just there's a little more under a formula if you work there a long time. Mr. Kovacevic, you've cited 31727.4. I'm having a little bit of difficulty understanding. Maybe you can help me with this. It seems to say in the first paragraph, the first sentence, that any retirement for service-connected disability, he shall receive an annual retirement allowance, payable monthly installments, equal to one-half of his final compensation. Okay. That's right. Now, the next sentence seems to say the same thing, but to use different sources for the payment. Maybe you can explain that to me. It says, notwithstanding any other provision of the chapter, any member upon retirement for service-connected disability shall receive a current service pension or a current service pension combined with a prior service pension purchased by the contributions of the county and district, etc., which will equal one-half of the final compensation. Isn't that saying the same thing twice, once, without saying what the fund comes out of, and the next time saying exactly the same thing, out of which funds it comes? I don't understand it. Can you help me on that? I'm sorry, Your Honor. It looks to be repetitive. It does. But then it goes on to say something else. Or, if qualified for a service retirement, he shall receive his service retirement allowance if such allowance is greater. Now, your position is that by putting that phrase into the statute, the legislature said, whatever a service-related disability guy gets, he gets under this paragraph, and his service retirement allowance is considered a payment for his service-related disability retirement. That's my position, Your Honor. It doesn't make any difference on how you count it up or what component you put into it to determine how much they get. He could have gotten his service retirement allowance whether he'd ever been injured or not, based on years and service. That, yes. But what you're saying is, it's mentioned in this paragraph, converts that normal service pension into a payment for disability. That's correct, Your Honor. I got you. The statute doesn't say it. Is there any case that says that? The Bakken case, I think that Picard says that because it's not a total transfer. I apologize for being repetitive, but we take the position that they don't say, okay, now you're going to go solely on a regular, non-disability pension. That supplants the prior amount. They merely say, this is how we compute it, but in order to get through the requirements, you have to take, of course, a physical, and it has to be, as the statute says, service-connected disability. I say once you get into that. Here's a problem we have. We don't deal all the time in California pension statutes, but we deal all the time in Chevron deference. Now, here's a regulation by the IRS which is interpreting a possibly ambiguous statute, and we're told over and over again to give deference to the regulator's interpretation of the statute. Why shouldn't we do that in this case? The reason, Your Honor, is that when you, even presuming for this argument, for sake of answering the question, that Chevron applies, Chevron says completely that if it does apply, first you have to decide whether the statute's ambiguous, then if it does apply, you have to look into the intent of Congress. The intent of Congress from 1919 on was that all of the persons who qualified in arduous occupations who had on-the-job injuries, that income will be totally excludable. Unusually in the Internal Revenue Code, 104 says all the gross income is excludable if you are paid on a service-connected disability pension. The code section that the government cites, 61, has an exception of 104. My problem is this. If the statute is not unambiguous, in other words, the statute is ambiguous, that's step one in Chevron. That's right. As to step two, the intent of Congress, isn't that something as to which the administration can have an opinion which is due Chevron deference? No, Your Honor. The Chevron Murphy, which is cited in my brief, gives the history of impairment of human capital. And the history, Murphy is, I don't have to cite it to court because it's cited in my brief, Murphy reviewed the history of injuries to people work-related. And they get into the theory of human capital. Congress at that time did not think that human capital should be taxed. And so the history is that this all should be excludable. Now that may not be the present theory, but the answer to Chevron is that the Internal Revenue Service can't legislate. It's up to Congress. If they want to change that, then they can. But the statute's been there for almost 100 years. So let me ask you this, following up on Judge Baez's question, the linchpin of your argument is that this regulation is invalid, is outside the scope of the statute. Is that? That's right. There's no gap to fill, Your Honor. Okay, now if we were to disagree with you about that, was the regulation properly implemented here? Is there anything incorrect about the way either the tax court or the district courts actually implemented the regulation? Well, I disagree with what the court said on whether the tax court was incorrect, because Givens, I think, is really the case in tax court. I know, but there are two sides to this story. That's right, Your Honor. If we agree that the regulation is valid, I know you don't agree, but if we decide that the regulation is valid, does that cook your goose, basically? Now, I don't quite agree on – I've read that regulation, of course, many times. It says, to the extent. Right. And it's a little vague in itself. And then it repeats, it says, if it's work-related on-the-job injuries. Well, it says, to the extent, and the ruling was half of it is, half of it isn't. That's what I'm asking you. Assuming this is valid, is there any other argument to be made about it? I think the regulation is a little bit ambiguous in itself, Your Honor, because to the extent, and there are – Well, even then, even if it's ambiguous, then is there some abuse of discretion in the way the judge resolved the ambiguity? I would suggest and submit to Your Honors that Revenue Ruling 85-501, which I've cited, says if you merely have a formula, the regulations don't apply. The Internal Revenue Service did not agree with their own regulation. The other argument, which is admittedly different from my answer, the Internal Revenue Service did not promulgate that regulation in 1919. It came along many, many years after that. And so it's not entitled to deference. And I've cited the 7805 why. So I'm out of my time, and I'll get back on – I'm not – I got tied up here. I presume I've got about five minutes left. Well, we'll give you more time. Don't worry about it. Thank you. Okay. Good morning. Please, Court. My name is Robert Metz, and I represent the Commission of Maternal Revenue and the United States in these consolidated appeals. As Your Honors are probably well aware, the question in this case is whether the portion of the retirement pension that is paid, if and only if the recipient qualifies for a service retirement, is exempt from tax under Section 104A of the Internal Revenue Code. But reading the California Code 31727.4, which talks about the additional bump based on time and age, service and age, if it's mentioned in the section on service-connected disability, does it convert the payment from one of a service pension into a worker's compensation pension by merely mentioning it as a yardstick by which to measure the compensation? No, Your Honor. Do we have any cases that say that one way or the other? I think that we have this regulation, and the regulation is interpreted. I'm talking about California cases. As to the precise situation here where it says if qualified for service retirement, the retiree receives this service retirement allowance. That's right. Does that say California considers that what anybody would get based on age and years of service, if it's going to be paid to a man who is disabled and retired from service-connected disability, is transmuted into a worker's compensation payment? I think that you could have a different situation if you gave it to everybody. But you're not giving it to everybody. You're only giving it to people that are qualified for the service retirement. And in Section 31663.25 of the California Government Code, they're all age and service, length of service factors. You could retire at the mandatory age of 60, or you could have 20 years of service, or you could be age 50 with 10 years of service. And so you have to meet these service requirements to get it. And that is what the regulation— I understand your position perfectly, and it's a reasonable one. Yeah. Now, my question is, and it just occurred to me during the conversation with the other counsel, that maybe there's an intent here to transmute this service-connected pension for age and retirement into a worker's compensation payment if the retirement is caused by service-related disability. Has anybody argued that? Well, I think the service actually tried to argue something similar in the Givens case, but lost. There they tried to take a somewhat complicated scheme, but I'm trying to simplify it. There was three—there was an initial year where you got paid, and there was really no dispute that that was tax exempt. Then the second year, you could get the workman's compensation benefit, or you could get sick pay if it was higher than the workman's compensation benefit, and then there was a third amount that really wasn't relevant. But the service tried to say that, well, because part of this sick pay is service-related, that the whole thing is not under a workman's compensation act, and they lost because they tried to make an all-or-nothing position. And in the action on decision where the service disagreed with Givens, it pointed out that it had not made the right argument, that it had not made the argument that is relevant here, which is it should have been arguing there that only the amount of the sick pay that was in excess of the workman's compensation benefit should have been non-tax exempt. And so Givens is, I think, distinguishable for that and among many other reasons. Also, sick pay is not like what we have here where it says, if you qualify for a service retirement, then you get this additional benefit. And I think that perhaps the Wiedemeyer case out of the Sixth Circuit, which dealt with the question whether the regulation was valid or not, is instructive in this case. The Sixth Circuit expressly held that the regulation was valid and explained that the clearer purpose of the regulation is to distinguish between benefits that are intended to compensate an employee for lost earnings capacity due to injury and those benefits that are simply a retirement pension in consideration of the past services. And I think that the language in the regulation talks about to the extent of is significant, that you can have a bifurcated benefit here. I think the regulation here reasonably does that. I would also note that to the extent that there is no case directly on point, that we have revenue rulings that are directly on point and under the Supreme Court's decision in Cleveland Indians, when you're interpreting a regulation, that these revenue rulings are entitled to substantial deference. And the specific revenue rulings that I would cite would be 80-44 and Revenue Ruling 72-44. Both of those involve statutory schemes that are really not meaningfully distinguishable from this case. You're asking us to apply our deference rather than Chevron deference? Certainly our deference would apply, but Cleveland Indians was a situation where we had a treasury regulation and we had a revenue ruling and the Supreme Court there said you get substantial judicial deference and it said that the revenue ruling was a reasonable interpretation of the treasury regulation and that was the end of the matter to the extent that there was any ambiguity in the treasury. There was actually an ambiguity in the treasury regulation. We don't think there is one here. We think the plain language of the regulation covers it. And in both 80-44 and Revenue Ruling 72-44, we had a situation where you had a statute that provided that you either got 50% or 60% of your final compensation and also allowed for you to get your service retirement if it was greater. And the service there held, applying the regulation, that the 50% or the 60% was non-taxable, but the excess amount was taxable. So to the extent that the plain language of the regulation is not dispositive here, the interpretation of these revenue rulings should be. I'd also like to say I don't think there's any question that the regulation here is valid. It was promulgated under Section 7805 of the Internal Revenue Code, which allows the Secretary of the Treasury to promulgate all needful rules and regulations. And Judge Baez pointed out that these regulations are entitled to Chevron deference. And the Supreme Court confirmed that in a 2011 decision called Mayo Foundation, which is discussed in our brief. And, you know, essentially if the statute does not directly address the question and we have a reasonable interpretation, the regulation is dispositive. And here the statute does not expressly address the kind of situation we have here. The statute simply says that an amount paid under Workman's Compensation Act as reimbursement for personal injury or sickness is exempt from tax. But the statute doesn't have any definitions. It doesn't give examples or explain how it applies. And it certainly doesn't talk about a situation where someone's going to be getting a benefit if and only if they qualify for a service retirement, which are based upon agent links of services. And as I previously mentioned, the Sixth Circuit actually addressed the validity question in Wiedemeyer and held that the regulation was a reasonable implementation of the statute. The cases that the taxpayers have cited, I think in general there's a multitude of cases, but I think the biggest distinguishing point is that none of them address a situation where the benefit is provided if and only if you qualify for a service retirement that is based on age or links of service or both. But as to... So if a worker were disabled the first day on the job, he'd be entitled to get half his salary. Right. But he'd have to wait until he was 55 or whatever other age is necessary before it could be bumped up to a service pension level. Well, they wouldn't get a service pension if they were injured on their, say, the first or second day of the job because they would never qualify for the service requirement. In fact... Let's say he's worked a month, right? Yeah. So now he's qualified. But he'd still have to wait until he was 55 to get that additional pension. Well, he won't get the service retirement allowance because he hasn't served out enough time. As a matter of fact, that was a ruling of this court in Picard. The reason why in Picard we had a situation where you got a disability retirement pension based upon your occupational injury. He hadn't been working very long. And then, according to these, and this happened in three separate cases, Wedemar, Marbury, and Picard. Anyway, in Picard, his benefit went down when they measured from the date of hire he would have gotten to the service retirement. But the court pointed out that they can't take away the disability pension in that situation because he never had any service. He never qualified for any service. He didn't have any service that would qualify him for the retirement. And so, therefore, in Picard, they continued to give him the tax exemption even though the amount went down and it equaled what you might have gotten if you qualified for a service retirement. But the court pointed out that he only qualified for disability. He did not qualify for a service requirement. So Picard, I think, is distinguishable from the situation. It actually supports our position on close reading. I don't know if the court has any further questions. If not, I'd simply conclude that the decisions of the tax court in the Central District of California were correct and should be affirmed. Thank you, Mr. Missler. Mr. Taylor, we'll give you a minute, and I think Mr. Kovacevic will have a minute. Thank you. I would like to touch briefly on a point I made in my original presentation speaking about deference to administrative agencies. Excerpts, page 38, is the letter that LaSara wrote to the taxpayer saying that he had been granted a disability pension. This is a few years after his actual ending his service. And it says the effective date is October 1, 2001, retroactive to date following last day of compensation. That was actually when it was agreed that he had terminated his paid active duty service and had transitioned into the workers' comp mode. I believe that the administrative agency tasked with implementing these statutes thinks that this matters, that you have a workers' comp retirement when it is determined to be a workers' comp retirement. Even, as happened in Mr. Seward's case, they retroactively characterized his service retirement that he took while he was waiting for the determination. A minor point on Picard. The appellate opinion on Picard appears to stem from differences of stipulation in Mabry and the Picard tax court case. In Mabry, a stipulation was made that the individual had been, the clock had been ticking for him on his service pension. The two sides stipulated to that. In Picard trial court level, the two sides did not stipulate. In fact, the two sides stipulated to the contrary, saying that he had not been accumulating his service pension points. I see that you're out of time. Thank you. Thank you. Mr. Kovacevic. You've got a minute in reply. I presume I get five, Your Honor? You get five? Five. I think you used up the time, but we'll... Thank you. I'd like to respond to the Internal Revenue Service argument. We know that statute does not give specific allowance or instruct the Internal Revenue Service to write regulations under 104. That's clear, and I don't think there's any argument about that. There is the argument that 7805, that's a statute, of course, that generally gives the IRS a chance to write a regulation, but it says that it is limited. 7805 says to need full regulations. Now, here, again, we have a statute passed by Congress saying all the work-related disability payments are excludable. So then the Revenue Service is coming in and said, wait a minute. We want to have a rule that only part is excludable. That is the epitome of legislation. Once again, that's up to Congress. There are very few statutes, again, that say that all income is excludable or all payments are excludable, and this is one of them. There's a lot of discussion on which cases are in point. Freeman, which I commend to your honors as in point, it says the retirements due to physical disability, and on page 73, I believe it is, it says, the uncontroverted facts show that Freeman's sickness developed while he was in active service. This is all the showing that is required. I submit, too, that Gibbons is in point and should be followed. I realize it's a tax court case. Freeman discusses all kinds of prior cases, and unusually in internal revenue and many other laws, we don't have an amendment of this particular clause in almost 100 years. So all of those prior cases discuss, and there was a case called Prince that had a combination. So there are cases, the whole sense of the cases that have been on this, and there are several, is that unless it supplants into a complete retirement pension, regardless of disability, all of the income is excludable. The Wiedemeyer that counsel mentioned was distinguished in Picard. Picard in the Ninth Circuit held specifically and discusses Wiedemeyer at page 764, I believe it is. Here, Picard's disability benefits do not transfer to a service retirement pension, and then it distinguishes Wiedemeyer, saying it doesn't apply to our case, Picard. So Wiedemeyer has been distinguished in the Ninth Circuit. It appears that the Ninth Circuit is strongly saying that the pensions, and none of the amounts of the pensions for work-related disability are taxable. If you'd wrap up, I'd appreciate it. Thank you. We're running out of time. Thank you, Your Honor, and I appreciate the courts hearing this matter. Thank you, gentlemen, Mr. Taylor too, Mr. Messler as well. The case just argued is submitted. Good morning. Thank you.
judges: Quist, Silverman, Bea